At this time, we'll hear Manuel versus the Pepsi-Cola Company. Good morning, Your Honors. Jack Fitzgerald on behalf of Plaintiff Appellants Elizabeth Manuel and Vivian Grossman. With your permission, I'd like to reserve three minutes for rebuttal. This case comes before the Court on an appeal of a dismissal with prejudice under Rule 12b-6. Our principal contention on appeal is that the facts alleged in the First Amendment complaint are sufficient to state a plausible claim for misleading advertising. The District Court disagreed with us for two reasons. First, it found that the complaint is based on a strained and artificial interpretation of the phrase, diet Pepsi, that no reasonable consumer would adopt. And second, it found that the complaint does not plausibly allege that Pepsi's representations were actually deceptive because plaintiff's claims have outrun the science. I'll address each of those in turn. First, as to the interpretation of diet and diet Pepsi, plaintiffs allege the following. First, that the word diet commonly refers to weight loss, as in, I'm going on a diet. Second, that Pepsi has marketed diet Pepsi as benefiting weight loss and body composition. Third, that plaintiffs themselves believed that Pepsi's marketing of the product as diet meant that it would contribute to their healthy weight management. And finally... In the advertisements that you included in your complaint to show that Pepsi markets diet Pepsi as weight loss, when were those ads from? Those ads are from the 70s and the 80s. And, you know, diet soda has a long history in the mid-60s and there was, at the time, it was introduced for diabetics. And, you know, the advertising for a long time was very explicit about, you know, body composition and weight and good for diabetics. Now, that advertising may have trailed off more recently, but it's become so ingrained in our culture that we just know that, I mean, if we just think about common sense and common experience, the reason people drink diet sodas, or at least one of the primary reasons people drink diet sodas, is to avoid the sugar and the calories that come with the regular version and the health consequences that come with the regular version. So we know this because they marketed it this way for a long time. And remember, both of our plaintiffs allege that they've been buying diet sodas for over 20 years. So they certainly would go back to the 80s. Counsel? Yes. Yes, Your Honor. Counsel, I have a question. Do you allege, in your complaint, that at the time Pepsi started using diet, this was incorrect? That is, at the time Pepsi, the term was first being used, there was none of this evidence that you say now is developing. That's correct, Your Honor. I would say, as a matter of absolute fact, what the science is revealing today was just as true then. Aspartame was affecting people negatively back then. Well, but in terms of whether somebody is falsely advertising, at what point, along a very weak spectrum. And we say that what diet, that what Pepsi was doing was no longer true, sufficient to give rise to a spook. Now, you know, it may be that way, but if it wasn't so, and you don't allege it was so, when they started, where are we? And sometimes, you know, science comes in very clearly, and say at point X, it becomes absolutely clear that diet Pepsi increases weight. If that happened, okay, that would be a finite point. But where, when it was not false to begin with, and where the evidence, whatever it is, is slowly accumulating, can we say that somebody is lying enough to give rise to a spook? And by the way, that's the question for New York, is it not? The New York question about whether they want that at a certain point or not. Yes, Your Honor. I understand the question. So non-nutritive sweeteners have been studied since about the mid-80s, and if you look at some of the studies we cite in our complaint in the early 2000s, 2008, 2009, those studies are somewhat equivocal. But if you look at the later studies that we cite from 2013, 2014, 2015, 2016, 2017, those studies are getting much stronger. And one I would point to is Fowler 2016, which we cited in notes 15 to 16, page 32 of our brief. But that study basically, it's a review, and what she does is reviews all of the work that's been done on rodents, and all of the work that's been done epidemiologically, and shows that there's a great deal of overlap in the results, and concludes that from that overlap you can see that there's something wrong here, that it can't be explained just by reverse causality, that there's something going on here. But at what point does New York want a lawsuit to lie? Well, I... It didn't lie at the beginning, and it doesn't lie with the first studies. At what point does New York say, okay, a lawsuit lied? Well what I would say, Your Honor, excuse me, what I would say, Your Honor, is that's a question of fact for the jury. We believe that we have sufficient evidence in the complaint... So the question of what New York law prohibits is a question of law. It's not a jury question. It would be when the evidence shows by a... When the science shows by a preponderance of the evidence that it's more likely than not that something is happening here. And in fact, Judge Rakoff, at a speech you gave at Dartmouth, you noted that scientists speak in probabilities, not uncertainties. And that's one of the problems here, is that these courts have cited the cautions in these papers. But that's what... Any peer-reviewed paper... I mean, to get... And I haven't yet had a chance to review the studies that you cited. But the way science views this is through the null hypothesis. And so you are right that it's not sufficient for your adversary to simply say, well, they've shown correlation but not causation, because science today deals mostly with inferences to be drawn from correlations. But the cutoff is whether it's a p-value of .5 or less. I don't know, because I haven't looked at them yet, whether any of your studies meet that standard. I would say absolutely. And there's six of our best studies, I would point you to, if you're going to look at them. So, Swithers 2013, Suez 2014, and Fowler 2015, which is in our complaint, paragraphs 27, 28, and 29, notes 5 through 6. And then Azad 2016, Fowler 2016, and Chia 2016, which are in our opposition brief at pages 31 to 32, notes 13 to 18. But what I would just conclude on the science is it's an issue that's ill-served to be resolved at the pleading stage, because you really have to get into it. And we're going to have an expert witness. We're lawyers pleading this, and we have to plead a plain, simple statement of our case. But we're going to have an expert that's going to get into this and talk about this epidemiological evidence and the rodent evidence and how strong it is. And there's also, there's a study that Dana Small did in Yale, where she showed that a mismatch between sweetness and calories can result in bad metabolic consequences. You've reserved three minutes of rebuttal. Thank you. Thank you, Your Honor. May it please the Court. Drew Tulemelo of Gibson Dunn for the Pepsi for at least two separate independent reasons. First, as five separate district courts have held, Diet Pepsi clearly and unequivocally communicates that it is the zero-calorie alternative to regular Pepsi. Dictionary definition . . . How can you possibly say that unequivocally at 12 v. 6? I don't think anyone can hear what you're saying, Judge Calabresi. I'm sorry, you could not hear me. Well, I couldn't, and therefore I'm assuming the lawyer would be at sea as well. Let me repeat it. How can you say that at 12 v. 6? That's only something on which evidence would then come in later about whether people were confused or not? Well, I would respectfully disagree, Your Honor, to the extent the suggestion is that at 12 v. 6, courts are not authorized to evaluate whether a reasonable consumer would view the challenged label term as deceptive. That much is clear from Twombly, Iqbal, this court's decision in Fink. Just getting back to your first point, I don't really understand what you're saying there. Supposing Pepsi had put out a product which, instead of calling it Diet Pepsi, it called it Yes, that was an alternative to regular Pepsi, but they're also saying to the consumer, in my example, very explicitly, the reason you might want to buy this kind of Pepsi as opposed to regular Pepsi or, God forbid, Coca-Cola, is that it helps with weight loss. Now, isn't that exactly the same message that Pepsi was saying when they used the term Diet as shown by these ads? No, Your Honor. When Diet was approved as a label by the NLEA and its implementing regulations, it was a nutrient content claim approved for use on low-calorie products. It was authorized at the same time as reduced-calorie, low-calorie, sweetened with artificial sweeteners, diet, dietetic. Those all came in at the same time. And they were all approved to have no meaning? Be meaningless? No. They were all approved for products that contained low calories. And if you now look at dictionary definitions, all the authoritative dictionary definitions as part of the American lexicon and the English language, Webster's Third, Oxford, Cambridge Dictionary, New American, Oxford Dictionary, all of the dictionary definitions specifically refer to Diet as a reduced-calorie beverage. That's what Diet Pepsi means. Plaintiffs concede this at page 15 of their brief. They say... Also... But that's not the point. Also, that is because at the time that this was done, there was no doubt, no scientific doubt that it did that. The question before us is what happens if, after that time, doubt is created so that people read the words differently? At the time it was used, it meant that. But today, it may mean something else. And that's what makes this case so difficult. Your Honor, I believe the phrase Diet, as it is understood and has been understood in the 50-plus years that this product has been in our households, as it is defined by FDA regulations, which is when Diet precedes another referent, it means it deletes the calories normally present in the referent drink, that's 105-66, and common dictionary definitions, all have stayed the same. Diet means low-calorie. If what Your Honor is asking is if nutrition science is evolving such that a statement that something is low-calorie or no-calorie or reduced-calorie may have implications for weight gain, that's a different question. What do you make of this ad that said A13? It's a Pepsi-Cola Diet Pepsi ad, which shows in the first portion of the ad, it says you can do it, and it shows a woman being able to get now into very tight-fitting jeans, and then it says in the second portion of the ad, we can help, Diet Pepsi. You say that's not a clear statement that by using Diet Pepsi you will help reduce weight? Your Honor, it's a clear statement, as Judge Engelmeyer and the five other courts have found, that relative to full-calorie Pepsi, you are not going to get the calories that you would get. As counsel said, Diet Pepsi. You think this ad, and gosh forbid that this court should disagree with five other judges. My gosh, we never do that. But you think that this ad is not a clear, unequivocal statement that Diet Pepsi will help you lose weight? Your Honor, not in the way you're putting it. Context is crucial. And when you look at that ad, and particularly counsel has acknowledged, and I'm glad he did, that these ads appeared at the time Diet Pepsi was first entering the market. But you've been – that's consistent with your argument that this has generic meaning going back. It's second only to the American eagle as a symbol of Americana. So he's perfectly fair to say that from day one, you advertise this as a weight reduction benefit. It had to find a market niche compared to full-calorie Pepsi. Relative to full-calorie Pepsi, it has fewer calories. There's no dispute, and Judge Engelmeyer pointed this out, that consuming full-calorie Pepsi relative to Diet Pepsi is going to lead to more weight gain. There's no allegation that Diet Pepsi is worse than regular Pepsi. That's what these ads are trying to communicate. There's no allegation that these ads are false or deceptive. There's no allegation that these ads are not making the comparison between Pepsi and Diet Pepsi. Also, is that not a question of New York law? That is, this case is brought under GL, GBLS, whatever, and it is subject to weight, natural value, all those things, because it is a New York case. So isn't the question we are trying to decide is what New York would say is misleading when at time one, a generic meaning gets attached to something, a statement is not misleading, and then somewhere along the line, some science develops that suggests it may be misleading, and at that time, you are still giving ads which may or may not feed that misleading. But that's a question of state law, isn't it? Yes, Your Honor, and there are two cases and contexts that I think may be helpful to the court in evaluating that issue. One is in the Lanham Act context in Oney v. Cornerstone Therapeutics. What this court said is if a product makes a claim based on non-fraudulent science, it cannot be attacked as a false and misleading advertising claim where the science is in controversy. But that's a Lanham Act that's a matter of federal law. Correct. That very case applied that very standard to 349 and 350 under New York law. That's because you're ignoring federalism. The fact that we believe it doesn't mean that New York believes it, and if it's an issue of New York law, who are we to tell New York what it must do? Well, the issue I would respectfully submit that the issue under the Lanham Act of what's deceptive and misleading advertising is substantially similar, if not identical, to what's deceptive or misleading under 349 and 350. Are you saying that New York may not call, make something misleading unless it is also misleading under the Lanham Act? Where on earth do you get that idea? No, Your Honor, I'm just saying there's no evidence that New York has done that. There's no New York law at all. There's no New York law on this issue at all. We have no idea what New York would want us to do in this case. I mean, to the extent you are asking for what the highest court in the state of New York would say, I agree, 349 and 350. Then shouldn't we certify? I don't think you need to certify, Your Honor, where, again, the definition of diet as a nutrient content claim was intended to be used on low-calorie, where dictionary definitions make clear it's low-calorie, where FDA regulations 105.6 make clear that if diet precedes a referent, it's low-calorie, where we've had these products in our homes for 50 years and everybody understands it's low-calorie. There is no promise, implied or otherwise, in use of the term diet that means weight loss. You keep coming back to the regulations. So the FDA, the regulations you've been referring to, are placed under a section titled label statements relating to usefulness in reducing or maintaining body weight. And the section goes on to, the regulation goes on to say that it applies to any food that purports to be or is represented for special dietary use because of usefulness in reducing or maintaining body weight. That's 21 CFR section 105.66A, but of course you do that. So the FDA views these labels as generically part of a suggestion to the public of what is useful in reducing weight. Your Honor, the regulation says both body weight and caloric intake. And with respect to body weight, there was a whole separate provision of label terms that applied to food items that had special dietary uses. For example, formulated meal replacements. Over time, as FDA has recognized that those, that the general public was becoming more aware of the relationship between calories and, between calories and body weight, that it then lifted all of the special rules for the products that had, that were intended for special dietary restrictions. I think what I would say about the claim here is that the term diet is reasonably unambiguously understood to mean low calorie. The debate here is, as a matter of nutrition science, does signaling low calorie or reduced calorie or no calories or no sugar, does that, do consumers, are they now confused by what a calorie would do? But there's no dispute that consumers understand when they drink Diet Pepsi, they're getting a Diet Pepsi drink. And if this claim is able to go through on the theory that artificial sweeteners are weight inducing, which, by the way, I don't think the science shows at all, as the judge below held, but all the foods labeled diet, dietetic, low calorie, reduced calorie, they can all be challenged on the very same theory that a consumer, of course, would consume this product that says low calorie, thinking that it would be better for them for weight maintenance. And, of course, these lead to weight gain based on the use of artificial sweeteners. All of those approved and authorized label statements would be subject to challenge. And that is particularly inappropriate here. Counsel, what you say is right. If diet comes to mean no cal, and the question is, no diet originally may have meant that, does it properly mean that still? Two words are different. It may have come to have a meaning that makes it be the same. But is that, in fact, the case? Is that something one can say at 12D6? Your Honor, I think if I understand the question, at the dawn of the era of Diet Pepsi, when Congress and the FDA authorized the use of the label, it was understood as zero calorie. That definition, if anything, has only solidified over 50 years. It's now in every dictionary that the Supreme Court has considered authoritative in any context. What the plaintiffs are alleging is that the nutrition science about artificial sweeteners is changing and that the impact of consuming foods with artificial sweeteners is changing. We totally disagree with that view of the science and don't think, as all the courts have concluded, that there's a plausible basis to infer causation on the basis of those studies. But the term diet, which is the threshold issue they have to overcome in this case, that diet means weight loss, that is not a reasonable interpretation of the term. And if I could say just a few words. I think it's time. Fair enough, Your Honor. Okay, thank you. What's the relief that you want in this suit? All you have to do to reverse and find a favor. Andrew, what's the relief that you're seeking? To vacate the lower court's decision. No, what's the relief you want in this lawsuit? Oh, injunctive relief in terms of the label diet as well as compensatory damages. Compensatory damages, how would you measure that? The price premium that people paid for a product that's represented to be diet. What if it's the same price as the non-diet? Well, I don't think the correct comparator is regular soda. I think the correct comparator is a product that's labeled to be diet but, in fact, is not diet. Could you say this is on behalf of all others similarly situated? Correct. Does that mean people who consume diet soda on the theory that it was going to help them lose weight and they added weight? Or is it everybody? It's everybody who bought diet soda because the theory is that that representation creates a price premium in the market for people for whom diet is important. And you say it's on behalf of the general public? Correct. What's the theory of your suing on behalf of the general public? For the injunctive relief that would benefit the public if they're no longer misrepresenting the product to the public. Yes, Your Honor. Yes, Judge Calabresi. It's not possible that if we certified, the New York Court of Appeals might say that injunctive relief in the future against using this term diet is justified because it is today misleading and yet it was not misleading in a way that New York would want it to be damages under a general labor law. Is that not a possible result? And leaving aside your clients, might that be a result that if New York wanted would be perfectly sensible for the future? In effect saying diet now does not mean that and is misleading but diet in the past was not enough to give rise to damages. And if New York might want to say that, shouldn't we let them stay? That could be one possible result, Your Honor, if the fact finder doesn't believe that there was evidence that it was false before this time. We think there is evidence that it was false before this time. But again, I guess what I want to go back to is we're at the pleading stage and I think what this argument reflects is that there are plausible interpretations both ways. And when you go to Anderson News, what it says is if plaintiffs have advanced a plausible interpretation, then that is sufficient to state a claim even if the judge thinks that another interpretation is more plausible. What if the label of a soda said reduced calorie? Would that be misleading? But it also had aspartame. Would that be misleading? I think the answer to that is no. Diet has... The answer is no. So it says zero calories and it has zero calories. That would not be misleading even if it contains some chemical that made you obese as hell. Correct. Our position is that diet has a quality to it that's above and beyond low calorie. And there's a reason they don't call it low calorie Pepsi. They call it diet Pepsi. Well, I don't know what the reason. You're saying there's a reason. Well, I would submit the reason is because consumers... Low calorie and no calorie. Why would people be interested in something with low calorie? Why do you suppose people would be interested in saying something is low calorie? Because they want fewer calories. Correct. For weight control purposes. Your point is where diet suggests an affirmative value beyond no calorie. It's a suggestion that if you take this drink, you will reduce your weight. I think that's true. And there's also, you know, because it's no calories, it's not just that you'll reduce your weight if you substitute it for a regular, but that if you drink it, it's not going to contribute to weight, just like water. That counts, huh? Yes, yes, Your Honor. There's another explanation. They use diet because at the time they started to use it, it meant both things. So why not use it? Once they had used it, that became part of the label. And, of course, they'd want to keep using it. That doesn't mean that you are wrong, that it has now perhaps become misleading. I think it's, you know, fatuous to suggest that they used it at the beginning to say something different from what at the time everyone thought it did. I would just say this. Consumers don't go into the supermarket knowing FDA regulations and saying, oh, this is a nutrient content claim that means low calorie. Consumers go in saying diet means I'm going on a diet and I'm going to lose weight. And, by the way, I'm not going to drink the sugary sodas that we've all been hearing such terrible things about. And so I would say it's very misleading to call something diet when it's causing weight gain, even if it's not as much weight gain as a regular soda. If it causes any weight gain, it's misleading. And if it causes the sort of chronic illnesses, it's misleading. Well, you're saying that if it causes less weight gain, then it is still not diet. Yes. But people on a diet, they eat something, otherwise they would drop dead, right? That's true. So, by definition, people on a diet eat fewer calories. That's why they're on a diet. That's true, but there's a relative and an absolute notion to this. It's true that people expect, relative to regular soda, that diet soda is going to be better for their health and for their weight. But even setting aside regular soda, because they understand it has no calories and no sugar, they also believe in an absolute sense that it's not going to give them any weight, whether it's substituting for sugar. There's 150 calories in a soda, so we know 3,500 calories causes a pound of weight gain. So you need to drink 23 and a third sodas to gain a pound. Now, you would expect if you substitute... A person who wishes to lose weight might decide they're no longer going to have a molten chocolate cake, and instead they're going to eat cupcakes, correct? Well, that's true, but... But that doesn't mean that cupcakes will cause you to lose weight. Indeed, you have to eat something, and everything you eat has calories. And I think that illustrates the difference here. What they're saying is diet Pepsi has no calories. If you called it diet cupcake, it's not going to give you any calories, but, in fact, it makes you gain weight. I mean, the point here is that you would expect if you substitute 23 diet sodas for 23 regular sodas, all else being equal, to drop a pound of weight. But, in fact, our allegation here is if you didn't drop a pound of weight and you only dropped half a pound, then it would be misleading, because people, because it has no calories, expect it, like water, not to contribute to weight gain at all. Water is not food. No, but it lacks calories, just like diet Pepsi. But what it doesn't have is aspartame, which is affecting metabolic response and causing these problems. Thank you. Thank you, Your Honors. Thank you. Reserved decision. The case of United States v. Mighty is taken on submission. The case of United States v. The Juvenile Mail is taken on submission. That's the last case on calendar. Please adjourn court. Court is adjourned.